UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| LISA M. WILTSE, | ) |
| | ) No. CV-10-00154-CI |
| Plaintiff, | ) |
| | ) ORDER GRANTING DEFENDANT'S |
| v. | ) MOTION FOR SUMMARY JUDGMENT |
| | ) AND DENYING PLAINTIFF'S |
| MICHAEL J. ASTRUE, | ) MOTION FOR SUMMARY JUDGMENT |
| Commissioner of Social | ) |
| Security, | ) |
| | ) |
| Defendant. | ) |

BEFORE THE COURT are cross-Motions for Summary Judgment. (ECF No. 13, 20.) Attorney Maureen J. Rosette represents Susan I. Conkling (Plaintiff); Special Assistant United States Attorney Brett E. Eckelberg represents the Commissioner of Social Security (Defendant). The parties have consented to proceed before a magistrate judge. (ECF No. 8.) After reviewing the administrative record and briefs filed by the parties, the court **GRANTS** Defendant's Motion for Summary Judgment, **DENIES** Plaintiff's Motion for Summary Judgment and remands the matter to the Commissioner for additional proceedings pursuant to 42 U.S.C. § 405(g).

**JURISDICTION**

Plaintiff protectively filed for disability insurance benefits (DIB) and for Supplemental Security Income (SSI) on June 21, 2006. (Tr. 13; 105.) She alleged she is disabled due to Kyphoscoliosis, scoliosis, along with bulging and narrowing in thoracic spine. (Tr. 95.) Her claim was denied initially and on reconsideration. (Tr.

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 1

60-63; 66-70.) Plaintiff requested a hearing before an administrative law judge (ALJ), which was held on June 12, 2008, before ALJ Paul Gaughen. (Tr. 26-51.) Plaintiff, who was represented by counsel, and vocational expert Deborah LaPointe testified at the hearing. (Tr. 32-47; 48-50.) The ALJ denied benefits on September 3, 2008. (Tr. 13-51.) Later, Plaintiff submitted new evidence, which the Appeals Council considered, but ultimately the Council denied review. (Tr. 1-5.) The instant matter is before this court pursuant to 42 U.S.C. § 405(g).

**STATEMENT OF THE CASE**

The facts of the case are set forth in detail in the transcript of proceedings and are briefly summarized here. At the time of the hearing, Plaintiff was 28 years old with a high school education. (Tr. 32; 352.) She lived with her mother, sister and young son. (Tr. 42.) Plaintiff has past work experiences as a home attendant aid, a retail cashier, and a fast food worker. (Tr. 33-35.) Plaintiff testified that she had to stop working full time due to her back pain. (Tr. 35.) She said she has always had back pain, but the pain increased after she gave birth. (Tr. 35.) She testified that she cannot sit in a chair or stand for more than 20 minutes at a time, due to pain. (Tr. 37.) Plaintiff also asserted that she has difficulty sleeping more than three and one-half hours per night due to pain. (Tr. 39.) Plaintiff also said that she works a two-hour shift, helping a disabled woman with household tasks such as cleaning her house, shopping and Plaintiff takes her to doctor appointments. (Tr. 40.) Plaintiff reported that after her shifts, she has to lie on a heating pad for thirty to sixty minutes due to back pain. (Tr. 41.)

**STANDARD OF REVIEW**

In *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001), the court set out the standard of review:

> A district court's order upholding the Commissioner's denial of benefits is reviewed *de novo*. *Harman v. Apfel*, 211 F.3d 1172, 1174 (9th Cir. 2000). The decision of the Commissioner may be reversed only if it is not supported by substantial evidence or if it is based on legal error. *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999). Substantial evidence is defined as being more than a mere scintilla, but less than a preponderance. *Id.* at 1098. Put another way, substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). If the evidence is susceptible to more than one rational interpretation, the court may not substitute its judgment for that of the Commissioner. *Tackett*, 180 F.3d at 1097; *Morgan v. Commissioner of Social Sec. Admin.*, 169 F.3d 595, 599 (9th Cir. 1999).
>
> The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). The ALJ's determinations of law are reviewed *de novo*, although deference is owed to a reasonable construction of the applicable statutes. *McNatt v. Apfel*, 201 F.3d 1084, 1087 (9th Cir. 2000).

It is the role of the trier of fact, not this court, to resolve conflicts in evidence. *Richardson,* 402 U.S. at 400. If evidence supports more than one rational interpretation, the court may not substitute its judgment for that of the Commissioner. *Tackett*, 180 F.3d at 1097; *Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir. 1984). Nevertheless, a decision supported by substantial evidence will still be set aside if the proper legal standards were not applied in weighing the evidence and making the decision. *Brawner v. Secretary of Health and Human Services*, 839 F.2d 432, 433 (9th Cir. 1988). If substantial evidence exists to support the administrative findings, or if conflicting evidence exists that will support a finding of either disability or non-disability, the finding of the Commissioner

is conclusive. *Sprague v. Bowen*, 812 F.2d 1226, 1229-1230 (9th Cir. 1987).

### SEQUENTIAL EVALUATION PROCESS

Also in *Edlund*, 253 F.3d at 1156-1157, the court set out the requirements necessary to establish disability:

> Under the Social Security Act, individuals who are "under a disability" are eligible to receive benefits. 42 U.S.C. § 423(a)(1)(D). A "disability" is defined as "any medically determinable physical or mental impairment" which prevents one from engaging "in any substantial gainful activity" and is expected to result in death or last "for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). Such an impairment must result from "anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3). The Act also provides that a claimant will be eligible for benefits only if his impairments "are of such severity that he is not only unable to do his previous work but cannot, considering his age, education and work experience, engage in any other kind of substantial gainful work which exists in the national economy . . . " 42 U.S.C. § 423(d)(2)(A). Thus, the definition of disability consists of both medical and vocational components.

The Commissioner has established a five-step sequential evaluation process for determining whether a person is disabled. 20 C.F.R. §§ 404.1520(a), 416.920(a); *see Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987). In steps one through four, the burden of proof rests upon the claimant to establish a prima facie case of entitlement to disability benefits. *Rhinehart v. Finch*, 438 F.2d 920, 921 (9th Cir. 1971). This burden is met once a claimant establishes that a medically determinable physical or mental impairment prevents her from engaging in her previous occupation. 20 C.F.R. §§ 404.1520(a), 416.920(a). "This requires the presentation of 'complete and detailed objective medical reports of his condition from licensed medical processionals.'" *Meanel v.*

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 4

*Apfel,* 172 F.3d 1111, 1113 (9th Cir. 1999).

If a claimant cannot do her past relevant work, the ALJ proceeds to step five, and the burden shifts to the Commissioner to show that (1) the claimant can make an adjustment to other work; and (2) specific jobs exist in the national economy which claimant can perform. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v); *Kail v. Heckler*, 722 F.2d 1496, 1497-98 (9th Cir. 1984).

## ALJ'S FINDINGS

At step one of the sequential evaluation process, the ALJ found Plaintiff has not engaged in substantial gainful activity since March 17, 2006, the alleged onset date. (Tr. 15.) At step two, he found Plaintiff has the following severe impairments: dorsal kyphosis (with a clinical estimate of 15-30 degrees anterior deformity and an "S" shaped scoliosis), but with no signs of radiculopathy. (Tr. 15.) At step three, the ALJ found Plaintiff does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 CFR §§ 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926). (Tr. 18.) At step four, he found Plaintiff has the residual functional capacity to perform the full range of "medium work" as defined in 20 C.F.R. § 404.1567(c) and § 416.967(c), except she "would have slight mental limitations in basic work functions in terms of concentration and attentiveness, social interaction, and adaptive capacity. With some adjustment for alternating, the claimant could work 8 hours of an 8 hour day with allotted normal breaks." (Tr. 18.) The ALJ found Plaintiff is capable of performing past relevant work as a home attendant aid. (Tr. 24.)

**ISSUES**

The question is whether the ALJ's decision is supported by substantial evidence and free of legal error. Plaintiff argues the ALJ erred when he: (1) found her testimony was not credible; (2) rejected the opinion of Shawn Horn, Psy.D., LMHC; and (3) failed to find that she had a severe mental health impairment. Plaintiff also contends remand is necessary for the consideration of new mental health records obtained after the ALJ's decision was rendered, but that was reviewed by the Appeals Council. (ECF No. 14 at 9-18.) Defendant argues the ALJ properly considered the opinion evidence, the ALJ correctly concluded Plaintiff is not disabled, and the new evidence does not undermine the ALJ's conclusions. (ECF No. 21 at 3-20.)

**DISCUSSION**

**1.   Credibility.**

Plaintiff contends that the ALJ did not properly credit her testimony regarding her limitations from her back pain. (ECF No. 14 at 9.) The Plaintiff alleges that the ALJ did not specify why her testimony regarding her limited abilities and her need to rest upon a heating pad up to three times per day was not credible. (ECF No. 14 at 11.)

When the ALJ finds a claimant's statements as to the severity of impairments, pain, and limitations are not credible, the ALJ must make a credibility determination with findings sufficiently specific to permit the court to conclude the ALJ did not arbitrarily discredit claimant's allegations. *Thomas v. Barnhart*, 278 F.3d 947, 958-959 (9th Cir. 2002); *Bunnell v. Sullivan*, 947 F.2d 341, 345-46 (9th Cir. 1991) (en banc). If no affirmative evidence exists that

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 6

the claimant is malingering, the ALJ must provide "clear and convincing" reasons for rejecting the claimant's allegations regarding the severity of symptoms. *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998). The ALJ engages in a two-step analysis in deciding whether to admit a claimant's subjective symptom testimony. *Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir. 1996). Under the first step, the ALJ must find the claimant has produced objective medical evidence of an underlying "impairment," and that the impairment, or combination of impairments, "could reasonably be expected to produce pain or other symptoms." *Cotton v. Bowen*, 799 F.2d 1403, 1405 (9th Cir. 1986). Once the *Cotton* test is met, the ALJ must evaluate the credibility of the claimant.

In evaluating credibility, the ALJ may consider an unexplained failure to follow treatment recommendations and testimony by the claimant "that appears less than candid." *Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008). Also, the ALJ may consider the lack of consistent treatment, or an "unexplained or inadequately explained, failure to seek treatment or follow a prescribed course of treatment" can cast doubt on a claimant's sincerity. *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989); *Burch v. Barnhart*, 400 F.3d 676, 681 (9th Cir. 2005). The type, dosage, effectiveness and side effects of medication taken to alleviate pain or other symptoms is relevant in evaluating the intensity and persistence of symptoms. 20 C.F.R. §§ 416. 929(c)(3)(iv) and 416.929.(c)(3)(v).

In this case, Plaintiff alleged that the severity of her back pain prevented her from working. The ALJ found Plaintiff's statements concerning the intensity, persistence and limiting effects of her symptoms were not credible. (Tr. 21.) In discounting

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 7

Plaintiff's pain complaints, the ALJ relied primarily upon the inconsistencies between Plaintiff's testimony at the hearing, her application, and her complaints to her health care providers. (Tr. 21-22.) Additionally, the ALJ noted Plaintiff exhibited drug-seeking behavior in 2006-2007. (Tr. 21-22.) The ALJ also relied upon Plaintiff's reports to her physician that as a result of the fentanyl patch, her symptoms were significantly improved. (Tr. 22.) Finally, the ALJ contrasted Plaintiff's testimony about the severity of the pain with her daily activities. (Tr. 22.)

In finding the Plaintiff minimally credible, the ALJ provided several specific, "clear and convincing"[1] reasons for rejecting the claimant's allegations regarding the severity of symptoms that are amply supported by the record. For example, in the hearing on June 12, 2008, Plaintiff testified that due to her pain, she can sit for only 20 minutes and stand for about 20 minutes. (Tr. 37.) She said if she had to go up and down stairs everyday, it would be "excruciating." (Tr. 38.) She asserted that her pain requires that she lie down daily on a heating pad for thirty minutes up to three times per day to alleviate her pain. (Tr. 41.)

In January, 2006, Plaintiff underwent several sessions of physical therapy for her back pain. (Tr. 234-55.) She reported that the TENS unit was effective in helping with pain relief, and she reported she was improving. (Tr. 235; 238; 254.) Also, in March 2007, Plaintiff asked her treating physician Dr. Monroe for a fentanyl patch. (Tr. 288.) Later that month, Plaintiff told Dr. Monroe that the fentanyl patch controlled her pain and she wanted to

---

[1] *Reddick*, 157 F.3d at 722.

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 8

return to work. (Tr. 288.) In June 2007, Plaintiff told Dr. Monroe that she was pleased with how the patch was "letting her lead a more normal life." (Tr. 289.) The following month, Plaintiff continued to do well with the patch. (Tr. 289.) In late August, 2007, the fentanyl patch was still controlling her pain. (Tr. 290.) In September 2007, eight months prior to the hearing, Plaintiff presented "no particular complaints" to her physician. (Tr. 291.) The record contains only two chart notes from 2008, both from January. Plaintiff sought treatment because she reported she lifted a 68-pound wheelchair at work, and her back "flared up." (Tr. 318.) Dr. Monroe opined that Plaintiff was seeking a stronger patch, but instead of acquiescing, he advised her to stop abusing her back. (Tr. 318.) No additional chart notes for 2008 from Dr. Monroe appear in the record, and there is no evidence in the record to indicate fentanyl stopped effectively controlling Plaintiff's back pain.

Additionally, the record supports the ALJ's findings that Plaintiff exhibited drug-seeking behavior. See *Edlund*, 253 F.3d at 1157 (ALJ properly considered claimant's drug-seeking behavior). For example, in September 2006, Dr. Monroe told Plaintiff that he would not prescribe narcotic pain medicine without an agreement from a pain specialist. (Tr. 274.) In the chart notes, Dr. Monroe added: "It should be noted that, despite her saying that she has severe and unremitting pain, she really doesn't demonstrate any pain behavior in the office." (Tr. 274.) On February 1, 2007, Plaintiff returned to Dr. Magnuson's office at the Pain Management Clinic of North Idaho, and reported that she was in excruciating pain after a

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 9

steroid injection. She requested Oxycontin. The nurse practitioner indicated she was unwilling to prescribe Oxycontin under the circumstances. (Tr. 300.) Two days later Plaintiff arrived at the Valley Hospital emergency room complaining of severe pain, and she obtained both an injection of, and a prescription for, morphine. (Tr. 303.)

Finally, the ALJ's reason for finding diminished credibility based on Plaintiff's reported inconsistent daily activities is also supported by the record. The ALJ thoroughly reviewed Plaintiff's claims that she was incapable of performing basic household tasks and contrasted these claims with Plaintiff's admitted inconsistent activities. For example, Plaintiff asserted she could not lift her two-year old son into his car seat, but she admitted that she lifted a 68-pound wheelchair as part of her job. (Tr. 42; 318.) Also, as of late August 2007, the fentanyl patch controlled her pain. (Tr. 290.) No credible evidence exists in the record that the fentanyl patch stopped working effectively. As of late January 2008, Plaintiff was still refilling the fentanyl prescription. (Tr. 318.)

Plaintiff testified in June 2008 that she was in severe pain after working two hours, complaints similar to those lodged in an undated Disability Report.[2] (Tr. 95.) At the hearing, she admitted the patch helped, but asserted it was not enough: "The fentanyl? Yeah, it does help, but there is also a lot of breakthrough pain with it." (Tr. 43.) Because no treatment notes exist after January

---

[2] "I am in constant pain. I am unable to make it through a whole day of work without being in a whole lot of pain." (Tr. 95.)

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 10

2008 related to break-through pain, it is reasonable to conclude that Plaintiff's pain was not severe enough to require additional treatment.

The record supports the ALJ's specific, "clear and convincing"[3] reasons that provide the basis for Plaintiff's diminished credibility. The ALJ did not err by discrediting Plaintiff's pain complaints.

**2.    Shawn Horn, Psy.D., LMHC.**

Plaintiff argues that the ALJ failed to set forth the appropriate reasoning for rejecting Dr. Horn's opinion. (ECF No. 14 at 16; ECF No. 22 at 3.) In disability proceedings, a treating physician's opinion carries more weight than an examining physician's opinion, and an examining physician's opinion is given more weight than that of a non-examining physician. *Benecke v. Barnhart*, 379 F.3d 587, 592 (9th Cir. 2004); *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). If the treating or examining physician's opinions are not contradicted, they can be rejected only with "clear and convincing" reasons. *Lester*, 81 F.3d at 830. If contradicted, the opinion can only be rejected for "specific" and "legitimate" reasons that are supported by substantial evidence in the record. *Andrews*, 53 F.3d at 1043.

Social Security Rules expressly require a treating source's opinion on an issue of a claimant's impairment be given controlling weight if it is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the

---

[3] *Reddick*, 157 F.3d at 722.

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 11

other substantial evidence in the record. 20 C.F.R. § 404.1527(d)(2). If a treating source's opinion is not given controlling weight, the weight that it will be given is determined by length of the treatment relationship, frequency of examination, nature and extent of the treatment relationship, relevant evidence supporting the opinion, consistency with the record as a whole, and the source's specialization. *Id.*

Relevant factors in evaluating a medical opinion are the amount of evidence supporting the opinion and the quality of the explanation provided in the opinion. *Lingenfelter v. Astrue*, 504 F.3d 1028, 1042 (9th Cir. 2007); *Orn v. Astrue*, 495 F.3d 625, 631 (9th Cir. 2007). An ALJ may discredit treating physicians' opinions that are conclusory, brief, and unsupported by the record as a whole or by objective medical findings. *Batson v. Comm'r, Soc. Sec. Admin.*, 359 F.3d 1190, 1195 (9th Cir. 2004). A medical opinion may be rejected if it is based on a claimant's subjective complaints which were properly discounted. *Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001); *Fair*, 885 F.2d at 604.

In this case, the ALJ gave little weight to Dr. Horn's diagnosis, because she conducted no objective tests or mental exams. Instead, Dr. Horn relied exclusively upon Plaintiff's self-reports of her mental problems. Since Plaintiff was determined to be not credible, opinions based primarily on Plaintiff's own complaints are of reduced value. Also, no objective medical evidence exists that supports Dr. Horn's diagnoses of post-traumatic stress and chronic, severe depression. It also appears Dr. Horn failed to examine Plaintiff's medical records before arriving at a diagnosis.

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 12

Finally, Dr. Horn treated Plaintiff for a short time period, from May 21, 2008, through June 18, 2008. (Tr. 321-34.)

In sum, Dr. Horn's opinion was not based upon medically acceptable clinical and diagnostic techniques. Dr. Horn's medical opinion is conclusory, her chart notes are check-the-boxes, the notations are brief, and the diagnoses are unsupported by the objective medical findings. As such, the ALJ properly gave little weight to Dr. Horn's opinion.

Notably, the ALJ found that Dr. Horn was an "unacceptable medical source." (Tr. 23.) Under 20 C.F.R. § 404.1513(a)(2), acceptable medical sources include "[l]icensed or certified psychologists." The ALJ stated that Dr. Horn was a "licensed mental health counselor, not a licensed psychologist." (Tr. 17.) Dr. Horn possesses a Psy.D. degree, which is a professional, doctorate degree in psychology.[4] A doctorate degree in psychology is the equivalent of a "certified psychologist" and thus the ALJ's conclusion that Dr. Horn was not an acceptable medical source was error.

---

[4] http://www.apa.org/education/grad/faqs.aspx?item=6. According to the American Psychology Association, "the PsyD, first awarded in the late 1960s but increasing in popularity among professional independent programs, is a professional degree in psychology (similar to the MD in medicine). Programs awarding the Psy.D. place major emphasis on preparing their graduates for professional practice as practitioner-scholars but typically with less extensive research training." *Id.*

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 13

An ALJ's reliance upon an invalid reason in determining credibility will be deemed harmless where substantial evidence exists that supports the ALJ's conclusions on credibility and the error does not negate the validity of the ALJ's ultimate credibility conclusion. *Carmickle v. Commissioner, Social Sec. Admin.,* 533 F.3d 1155, 1162 (9th Cir. 2008); *Batson,* 359 F.3d at 1195-97 (applying harmless error standard where one of the ALJ's several reasons supporting an adverse credibility finding was held invalid); see also *Stout*, 454 F.3d at 1055 (defining harmless error as such error that is "inconsequential to the ultimate nondisability determination").

In this case, the ALJ's invalid reason - that Dr. Horn was an unacceptable medical source – was inconsequential to the determination of Plaintiff's credibility, and thus was harmless error.

**3.   Step Two Impairment**

At step two, the claimant bears the burden of demonstrating a severe, medically determinable impairment that meets the duration requirement. 20 C.F.R. § 404.1520(a)(4)(ii); *Bowen*, 482 U.S. at 146 n.5.  To satisfy the duration requirement, the severe impairment must have lasted or be expected to last for a continuous period of not less than 12 months.  *Bowen*, 482 U.S. at 140. The impairment "must be established by medical evidence consisting of signs, symptoms, and laboratory findings, not only by [the claimant's] statement of symptoms." 20 C.F.R. § 404.1508; 20 C.F.R. § 416.908. "[T]he impairment must be one that 'significantly limits [the claimant's] physical or mental ability to do basic work

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 14

activities.'" *Bowen*, 482 U.S. at 154 n.11 (quoting 20 C.F.R. § 404.1520(c)); see also *Smolen,* 80 F.3d at 1290 ("[A]n impairment is not severe if it does not significantly limit [the claimant's] physical ability to do basic work activities").

The ALJ found that Plaintiff's recently diagnosed depression, post traumatic stress disorder and major depressive disorder are non-severe. (Tr. 17.) The ALJ noted that no onset date for these disabilities was provided, and over the years, Plaintiff has registered only vague mental health complaints with her doctors. Additionally, the ALJ gave little weight to Dr. Horn's last-minute opinion because it was based solely upon Plaintiff's self-reports. (Tr. 23.) The ALJ noted that Plaintiff underwent five counseling sessions, and was transferred to Spokane Mental Health, but no evidence exists in the record that she continued treatment. (Tr. 17.)

Also, in determining that Plaintiff's mental impairments were not severe, the ALJ considered the following functional areas: activities of daily living, social functioning, concentration, persistence or pace, and decompensation. The ALJ found that Plaintiff would experience only mild or no limitations, and she had not experienced decompensation. (Tr. 17-18.)

The record supports the ALJ's conclusions. Plaintiff reported that the onset date for her severe psychological symptoms was in 2002, but these symptoms were notably absent from her disability report. (Tr. 95.) Prior to May, 2008, Plaintiff lodged few complaints related to depression, and the record reveals anti-depressants alleviated the symptoms. Impairments that can be

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 15

controlled effectively with medication are not disabling. *Warre v. Commissioner of Social Security*, 439 F.3d 1001 (2006); *Odle v. Heckler*, 707 F.2d 439, 440 (9th Cir. 1983) (affirming denial of benefits and noting that the claimant's impairments were responsive to medication). For example, in December, 2006, Plaintiff reported to Dr. Monroe that Paxil had improved her mood. (Tr. 275.) In July 2007, Plaintiff switched to Wellbutrin, which similarly improved her energy level and desire to engage. (Tr. 289.) Plaintiff did not complain of debilitating mental impairments until about one month prior to the ALJ hearing. (Tr. 335.)

The record does not establish that Plaintiff suffered from a severe, medically determined mental impairment that lasted a continuous period of at least 12 months. In the absence of this evidence, the ALJ properly found that Plaintiff had no severe mental impairments at step two.

**4.   New Evidence.**

In the Ninth Circuit, when the Appeals Council specifically considers new materials in the context of denying a claimant's request for review, "we consider the rulings of both the ALJ and the Appeals Council," and the record includes the ALJ's decision as well as the new evidence. *Gomez v. Chater*, 74 F.3d 967, 971 (9th Cir. 1996); *Ramirez v. Shalala*, 8 F.3d 1449, 1452 (9th Cir. 1993). If the new evidence shows a reasonable possibility exists that it would change the outcome of the ALJ's determination, then remand is appropriate to allow the ALJ to consider the evidence. *Mayes v. Massanari*, 276 F.3d 453, 462 (9th Cir. 2001). Evidence obtained after the ALJ has issued an adverse determination is less

persuasive. *Weetman v. Sullivan*, 877 F.2d 20, 23 (9th Cir. 1989). Additionally, after-the-fact psychiatric findings are "notoriously" unreliable. *See Vincent v. Heckler*, 739 F.2d 1393, 1395 (9th Cir. 1984).

Because the Appeals Council considered Plaintiff's new mental health records, the new evidence is part of the record on review by this court. (Tr. 5.) Plaintiff argues that newly admitted evidence undermines the ALJ's decision and establishes that her mental impairment is severe. (ECF No. 14 at 18-19.) The issue is whether the ALJ's decision is supported by substantial evidence after considering the new evidence. The new evidence submitted to the Appeals Council consisted of: (1) a July 2008 letter from Dr. Monroe; (2) an October 2008 psychological evaluation by Dennis R. Pollack, Ph.D., and (3) an October 2008 Mental Medical Source Statement. (Tr. 5; 349-61.)

Dr. Monroe's July 17, 2008, letter does not provide evidence of a "reasonable possibility" that would change the ALJ's decision. Dr. Monroe's letter opines that Plaintiff is "disabled for anything other than sedentary work." (Tr. 349.) While a treating physician's evaluation of a patient's ability to work may be suggestive of useful information, the determination of a disability is for the ALJ to decide. *McLeod v. Astrue*, 640 F.3d 881, 885 (9th Cir. 2011). In this case, Dr. Monroe's opinion related to Plaintiff's disabled status, or her ability to perform only sedentary work is not evidence that presents a reasonable probability of changing the ALJ's decision.

The remainder of the new evidence is from Dr. Pollack, and

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 17

consists of a psychological assessment and a mental medical source statement. (Tr. 351-61.) Dr. Pollack's single psychological assessment occurred on October 7, 2008, one month after the ALJ's adverse opinion. Dr. Pollack noted that Plaintiff's clinical scores reveal she had difficulty managing her anxiety, and she had "very high levels of anxiety, worry and when out of control, paranoid ideation. She lives in constant fear." (Tr. 356.) Dr. Pollack concluded that while additional testing needed to be completed,[5] Plaintiff's test results suggested a neuropsychological deficit.[6] (Tr. 357.)

Dr. Pollack's analysis does not present evidence that poses a reasonable possibility of changing the ALJ's determination. First, Dr. Pollack examined Plaintiff well after the ALJ's adverse determination, and thus is less persuasive. *Weetman*, 877 F.2d at 23. In addition, Dr. Pollack related that Plaintiff's testing was incomplete. (Tr. 361.) Moreover, the report does not establish the onset date of Plaintiff's post-traumatic stress and obsessive compulsive disorders and, thus, is it impossible to determine if

---

[5]Dr. Pollack explained that Plaintiff arrived at one out of her three scheduled interviews with him. Plaintiff was scheduled for additional testing, and she was to complete a second personality test and neurological tests, but she did not make it to her appointment. (Tr. 361.)

[6]Dr. Pollack also noted that Plaintiff was receiving treatment from Brandy Realkoff at Spokane Mental Health. (Tr. 353.) No records from Spokane Mental Health were submitted.

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 18

these alleged disorders meet the durational requirements or existed during the relevant period. (Tr. 357.) Significantly, this is the only diagnosis of obsessive-compulsive disorder appearing in the record. Finally, Dr. Pollack's assessment was that Plaintiff was mildly impaired. For example, in the mental medical source statement, Dr. Pollack assessed Plaintiff with no severe limitations, and only one marked and one moderate limitation. (Tr. 359.) Neither the assessment nor the report provide conclusive, objective medical evidence that Plaintiff has severe mental impairments of the duration and severity required for a finding of disability. As a result, this new evidence does not present a reasonable possibility that would change the ALJ's decision. Despite the new evidence, the ALJ's decision that Plaintiff is not disabled is supported by substantial evidence.

**CONCLUSION**

The Commissioner's determination of non-disability is supported by substantial evidence and free of legal error. Accordingly,

1. Defendant's Motion for Summary Judgment **(ECF NO. 20)** is **GRANTED.**

2. Plaintiff's Motion for Summary Judgment **(ECF NO. 13)** is **DENIED.**

The District Court Executive is directed to file this Order and provide a copy to counsel for Plaintiff and Defendant. Judgment shall be entered for Plaintiff, and the file shall be CLOSED.

DATED October 4, 2011.

S/ CYNTHIA IMBROGNO
UNITED STATES MAGISTRATE JUDGE

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 19